UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Kurt E.J.,                                         Case No. 19-cv-2460 (JRT/DTS)

      Plaintiff,

v.                                                 **REPORT AND
                                                    RECOMMENDATION**

Andrew Saul,
*Commissioner of Social Security*

      Defendant.

---

James Greeman, Greeman Toomey, 250 Marquette Ave., Suite 1380, Minneapolis, MN 55401, for Plaintiff

Michael Moss, Social Security Administration, Office of the General Counsel, Suite 340, 1301 Young Street, Mailroom 104, Dallas, TX 75202, for Defendant

---

    Claimant Kurt E.J. appeals the Commissioner of Social Security's denial of his September 8, 2016 applications for Disability Insurance benefits and Supplemental Security Income alleging a disability onset date of June 26, 2015. The ALJ found that Claimant became disabled as of July 29, 2018, the date his age category changed, pursuant to Medical-Vocational Rule 202.06. Claimant contends that substantial evidence does not support the ALJ's decision that he was not disabled between June 26, 2015 and July 29, 2018 because the ALJ failed to include all of his functional limitations in the RFC. For the reasons stated below, the Court recommends that the Commissioner's decision be affirmed.

**I.     ALJ DECISION**

The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(a). The Commissioner evaluates "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or approximates, a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *Brock v. Astrue*, 674 F.3d 1062, 1064 n.1 (8th Cir. 2012); *see also* 20 C.F.R. § 404.1520(a)(4).

The ALJ issued her decision on February 27, 2019. In steps one through three, she found Claimant has not engaged in substantial gainful activity since the alleged onset date of June 26, 2015, and has several severe physical and mental impairments – chronic pain syndrome with fibromyalgia tender points, right shoulder degenerative joint disease and tearing, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, right hip degenerative joint disease and labral tear, major depressive disorder, unspecified anxiety disorder/generalized anxiety disorder (GAD), obsessive compulsive disorder, unspecified feeding or eating disorder, and post-traumatic stress disorder (PTSD) – that do not meet or medically equal any listed impairment contained in 20 C.F.R., Part 404, Subpart P, Appendix 1.

At step four the ALJ found Claimant was not capable of performing any past relevant work. R. 62.[1] The ALJ determined that since June 26, 2015 Claimant had the residual functional capacity (RFC) to perform light work with certain additional limitations: no more than occasional crouching, stooping, crawling, kneeling, balancing and climb

---

[1] "R." refers to the Administrative Record, Docket No. 12.

ramps or stairs; no climbing ladders, ropes, or scaffolds; no overhead reaching with the right upper extremity and frequent reaching in all other directions with the right upper extremity; frequent handling and fingering with the right upper extremity; limited to simple routine repetitive tasks involving only simple work related decisions and routine workplace changes with only occasional interaction with coworkers, supervisors, and the general public. R. 43, 45, 49.

The ALJ found that on July 29, 2018 Kurt E.J.'s age category changed to an "individual of advanced age." R. 62. At step five she found that, from June 26, 2015 to July 29, 2018, given his RFC, Claimant was capable of performing other work in the national economy, such as merchandise marker, power screwdriver operator, or router and therefore he was not disabled during this period. R. 63-64. The ALJ found that as of July 29, 2018, when his age category changed, Claimant became disabled by direct application of Medical-Vocational Rule 202.06, 20 C.F.R. pt. 404, subpt. P, app. 2 § 202.06, and continued to be disabled through the date of the ALJ's decision on February 27, 2019. R. 64.

## II.   STANDARD OF REVIEW

The Commissioner's denial of disability benefits is subject to judicial review. 42 U.S.C. §§ 405(g), 1383(c)(3). This Court has authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing a decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* § 405(g) (sentence four).

Disability under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

3

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). Under the regulations, disability means that the impairment(s) is/are so severe that the claimant is not only unable to engage in previous work, but cannot engage in any other kind of substantial gainful employment that exists in the national economy. *Id.* § 423(d)(2)(A).

This Court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Telkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). On review, the Court considers "both evidence that detracts from and evidence that supports the Commissioner's decision." *Hartfield v. Barnhart*, 384 F.3d 986, 988 (8th Cir. 2004). If it is possible, based on the evidence in the record, to reach two inconsistent decisions, and one of those decisions is the Commissioner's position, the decision must be affirmed. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). In other words, the denial of benefits will not be disturbed "so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [the reviewing court] might have reached a different conclusion had [it] been the initial trier of fact." *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008); *see also Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988) ("The concept of substantial evidence . . . embodies a zone of choice within which the Secretary may grant or deny benefits without being subject to reversal on appeal.").

The claimant bears the burden of proving entitlement to disability benefits. *See* 20 C.F.R. § 404.1512(a); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ's RFC determination must be supported by some medical evidence of the claimant's ability to function in the workplace, but RFC is ultimately an administrative determination reserved to the Commissioner. *Perks v. Astrue,* 687 F.3d 1086, 1092 (8th Cir. 2012). Medical records, physician observations, and the claimant's subjective statements about his capabilities may be used to support the RFC. *Id.* Though it is the ALJ's responsibility to determine a claimant's RFC, it is claimant's burden to prove disability and demonstrate his functional limitations. *Baldwin v. Barnhart,* 349 F.3d 549, 556 (8th Cir. 2003). At step five the "burden of production shifts to the Commissioner to produce evidence of jobs available in the national economy that can be performed by a person with the claimant's RFC and vocational skills. The ultimate burden of persuasion to prove disability, however, always remains with the claimant." *Young*, 221 F.3d at 1069 n.5 (internal citation omitted).

### III. ANALYSIS

Claimant's appeal addresses the time period between his June 26, 2015 "alleged onset date" of disability and his July 29, 2018 "established onset date." He argues the ALJ's determination that he was not disabled prior to July 29, 2018 is not supported by substantial evidence because the RFC failed to identify all of his relevant limitations. Pl. Br. 10, Docket No. 14. Specifically, he contends the RFC does not accurately reflect (1) his upper extremity limitations, and (2) the frequent absenteeism reasonably anticipated from his severe impairments. *Id.* at 11-13.

### A. Upper Right Extremity Limitations

Claimant argues that his upper right extremity limitations are greater than what the ALJ found. He asserts that his orthopedic surgeon, Dr. Randall Lewis, opined he is permanently limited to work performed no higher than waist level. Claimant contends the ALJ purported to give great weight to Dr. Lewis's opinion but in fact failed to incorporate the limitations noted by Dr. Lewis into the RFC hypothetical question she posed to Vocational Expert (VE) Michael Stern. Thus, he argues, nothing in the record confirms that the jobs identified by the VE can be performed no higher than waist level. Consequently, the ALJ's determination that he was not disabled because jobs existed within his RFC is not supported by substantial evidence. *Id.* at 11-12.

The Commissioner responds that Dr. Lewis offered no such opinion. He contends Claimant misstates Dr. Lewis's opinion regarding "future work at waist level" and that the RFC is consistent with Dr. Lewis's opinion. Def. Br. 9-10, Docket No. 16.

The December 12, 2016 medical record at issue includes the following opinions of Dr. Lewis:

> Discussion/Summary
> I reviewed that his surgery has been successful with regard to pain relief but that **functional return will likely not occur. I outlined that future work at a waist level would be entirely appropriate but that overhead use would be difficult.** He may resume attempts at retraining for work and should follow up again at one year postop.
>
> Return to Work/School
> Diagnosis: S/P open rotator cuff repair and AC resection on the right side (7/27/16).
> Workability: **Kurt has a permanent lifting restriction: no lifting over 30 pounds at waist level. No lifting at shoulder level.** This patient is able to work with restrictions starting [blank].
> This is a permanent restriction for the patient.

R. 822 (emphasis supplied).

6

The ALJ found Claimant had the RFC to perform light work (which involves lifting no more than 20 pounds at a time)[2] with certain additional limitations:

> no more than occasional crouching, stooping, crawling, kneeling, balancing and climb ramps or stairs; no climbing ladders, ropes, or scaffolds; **no overhead reaching with the right upper extremity and frequent reaching in all other directions with the right upper extremity; frequent handling [and] fingering with the right upper extremity;** limited to simple routine repetitive tasks involving only simple work related decisions and routine workplace changes with only occasional interaction with coworkers, supervisors, and the general public.

R. 49 (emphasis supplied).

Dr. Lewis's opinions do not include restrictions greater than those determined by the ALJ in the RFC. He opined about lifting restrictions (no more than 30 pounds at waist level, and no lifting at shoulder level) and about overhead reaching. The ALJ gave "significant weight" to these opinions because Dr. Lewis is an orthopedist who had a treating relationship with Claimant and the opinions are generally consistent with his treatment notes. R. 61. Dr. Lewis did not opine about reaching in directions other than overhead, or about fingering or handling.

First, Dr. Lewis stated that, following Claimant's shoulder surgery, "functional return will likely not occur" and "**overhead use would be difficult**." The RFC limited Claimant to "**no overhead reaching** with the right upper extremity." Second, Dr. Lewis stated that "future work at a waist level would be entirely appropriate." He did not opine that Kurt E.J. could *only* perform work at a waist level. Third, Dr. Lewis opined that Claimant "has a permanent lifting restriction: no lifting over 30 pounds at waist level. No lifting at shoulder level." Consistent with these opinions, the RFC is limited to "light work,"

---

[2] 20 C.F.R. §§ 404.1567(b), 416.967(b).

7

defined as no lifting more than 20 pounds, and "no overhead reaching with the right upper extremity."

Fourth, the ALJ determined that Claimant could perform "frequent reaching in all other directions [other than overhead] with the right upper extremity" and "frequent handling [and] fingering with the right upper extremity." "Frequent" is defined as occurring from one-third to two-thirds of the time. Social Security Ruling 83-10, 1983 WL 31251, at *6 (Glossary). The statements by Dr. Lewis that Claimant relies on do not impose restrictions on reaching in directions other than overhead or on handling or fingering functions.

The ALJ's RFC determination is not only fully consistent with Dr. Lewis's opinion, it is also supported by other evidence in the record, including medical records of other treating physicians (R. 733) and opinions of state agency physicians (R. 165, 211-12), all of whom found Claimant's functional limitations to be less severe than those reflected in the ALJ's RFC.

Accordingly, Claimant's challenge to the RFC based on Dr. Lewis's opinions is unavailing and the RFC's physical restrictions are supported by substantial evidence in the record as a whole.

### B.     Anticipated Absenteeism

Claimant also contends the ALJ erred in not including attendance in her RFC. He asserts the "uncontroverted evidence" demonstrates that weekly appointments with a social worker were deemed "medically necessary" and that he also met with a psychotherapist approximately every three weeks. Maintaining these appointments, he

argues, would require him to be absent from work at least several times per month. Pl. Br. 12-13, Docket No. 14.

The Commissioner responds that the social worker, Emily Laconic, is not qualified under relevant law to determine what services were "medically necessary." She is not an "acceptable medical source" or a "treating source" and thus cannot offer a "medical opinion" or establish the existence of a ""medically-determinable impairment." *See* 20 C.F.R. §§ 404.1502(a), 404.1521, 404.1527(a)(1) and (2), 416.902(a), 416.921, 416.927(a)(1) and (2). Ms. Laconic did not provide treatment but rather worked with Claimant on basic living skills and provided services such as helping him find housing. Thus, the Commissioner asserts, any absenteeism due to meetings with the social worker are not to be included in an RFC determination. Def. Br. 12-14, Docket No. 16.

With respect to the psychotherapy appointments, the Commissioner argues that Claimant has not shown such appointments could not take place during non-work hours or on days off from work, or why such appointments would require Claimant to miss an entire workday. Moreover, Claimant only attended such sessions for a nine-month period, which does not satisfy the one-year durational requirement. *Id.* at 14-15.

The Court finds the ALJ did not err by not including attendance in the RFC. The evidence does not demonstrate that Claimant's medically-determinable impairments would cause a "substantial absence from work" as he contends. *See* Pl. Br. 12, Docket No. 14. First, as the Commissioner points out, the social worker is not qualified to make a determination that her services are "medically necessary" due to Claimant's functional impairments. The services provided by the social worker were for "basic living skills" such as improving "social skills and social contacts," "find[ing] housing," helping to "identify and

9

attend one new community activity," helping with "health care decision making" and "medication compliance," and "work[ing] on nutrition." *See* R. 783-803, 930-75, 1485-1621. No acceptable medical source or treating provider has opined that these services are medically necessary, much less that they would require excessive absenteeism. *See* R. 151-90, 195-42, 730-34, 740-55, 821-24, 920-21, 995-96, 1116, 1118, 1661-62, 1801-02, 1871-72, 1980-81, 2159-62.

Second, Claimant's psychotherapy appointments with Teresa Plummer occurred approximately once every three weeks during the nine-month period from October 2016 [R. 857] to July 2017 [R. 1064]. Pl. Br. 13, Docket No. 14 (citing R. 857, 859, 861, 863-65, 881, 890, 900, 906, 912, 1063-64). Claimant asserts that "[m]aintaining these appointments would necessitate absence from the workplace at least several times per month," [*id.*] but the psychotherapy appointments he cites did not continue for one year. He does not identify any appointment during the period from July 2017, the date of the last psychotherapy appointment, to his "established onset date" of July 29, 2018. Even if the appointments reflected an "inability" to work due to absenteeism (which the record does not establish), such inability did not last for a year. *See* 42 U.S.C. § 423(d)(1)(a) (claimant must establish disability by showing his inability to engage in substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than 12 months); *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002) (the "inability" to work, as well as the "impairment," must satisfy the 12-month duration requirement). Moreover, the record does not establish that such appointments, even if they were to continue, would require excessive absence from work. The ALJ did not err by not including attendance in the RFC.

For all the reasons described above, the ALJ's RFC is supported by substantial evidence in the record as a whole and must be affirmed.

## RECOMMENDATION

Based on the foregoing and all the files, records and submissions, IT IS RECOMMENDED THAT:

1. Claimant's Motion for Summary Judgment [Docket No. 13] be DENIED.

2. The Commissioner's Motion for Summary Judgment [Docket No. 15] be GRANTED.

Dated: July 30, 2020                                 s/David T. Schultz
                                                     DAVID T. SCHULTZ
                                                     United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).